**Roland C. MRACEK, Appellant**

v.

**BRYN MAWR HOSPITAL;
Intuitive Surgical, Inc.**

No. 09–2042.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Jan. 15, 2010.

Opinion Filed: Jan. 28, 2010.

Stewart J. Eisenberg, Esq., Daniel J. Sherry, Jr., Esq., Eisenberg, Rothweiler, Winkler, Eisenberg & Jack, Philadelphia, PA, for Appellant.

Sara A. Frey, Esq., Terry M. Henry, Esq., Denise H. Houghton, Esq., Cozen & O'Connor, Philadelphia, PA, for Appellee.

Before: SCIRICA, Chief Judge, BARRY and SMITH, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Roland Mracek appeals from the District Court's grant of summary judgment against him in this product liability case. We will affirm.

## I.

On June 9, 2005, Mracek underwent a prostatectomy after he was diagnosed with prostate cancer. His surgeon intended to use the "da Vinci robot," which Mracek claimed was designed, manufactured, and sold by Appellee Intuitive Surgical, Inc. Mracek alleged that the robot malfunctioned during the surgery and displayed "error" messages. The surgical team attempted to make the robot operational, but was unable to do so. A da Vinci representative came to the operating room to assist but could not make the robot functional. Mracek's surgeon used laparoscopic equipment instead of the robot for the remainder of the surgery. One week later, Mracek suffered a gross hematuria and was hospitalized. He now has erectile dysfunction, which he had not suffered from prior to the surgery, and has severe groin pain.

Mracek filed a complaint in state court against Bryn Mawr Hospital and Intuitive Surgical, stating claims of strict product liability, strict malfunction liability, negligence, and breach of warranty. Bryn Mawr Hospital was voluntarily dismissed, and Intuitive Surgical removed the case to the District Court. On March 11, 2009, 610 F.Supp.2d 401, the District Court granted Intuitive Surgical's motion for summary judgment. Mracek timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir.2009); *see* Fed.R.Civ.P. 56(c).

## III.

Mracek argues that the District Court improperly granted summary judgment on his strict malfunction liability claim. Mracek does not contest the Court's rulings on his other three claims. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 n. 11 (3d Cir.2007) (issues not briefed are deemed waived).

Generally, to establish a claim for strict liability, "a plaintiff must demonstrate, *inter alia*, that the product was defective, that the defect caused the plaintiff's injury, and the defect existed at the time the product left the manufacturer's control." *Barnish v. KWI Bldg. Co.*, 980 A.2d 535, 541 (Pa.2009); *see* Restatement (Second) of Torts § 402A. When a plaintiff is unable to adduce direct proof of a defect, the malfunction theory of liability permits him or her to prove defect with circumstantial evidence. *Barnish*, 980 A.2d at 541. To do so, a plaintiff must produce "evidence of the occurrence of a malfunction and ... evidence eliminating abnormal use or reasonable, secondary causes for the malfunction." *Id.* (internal quotations and citation

omitted). "[B]y presenting a case free of 'abnormal uses' by the plaintiff and free of 'other reasonable secondary causes,' a plaintiff can establish through inference from circumstantial evidence the second and third elements of a 402A case, that the alleged defect caused the injury (as opposed to another cause) and that the defect existed when it left the manufacturer's control (as opposed to developing after the product left the manufacturer's control)." *Id.* at 542.

Importantly, the malfunction theory does not relieve a plaintiff of his or her burden to present evidence creating a genuine dispute of material fact on each element in order to survive summary judgment. Rather, the malfunction theory simply permits a plaintiff to demonstrate these elements through circumstantial, instead of direct, evidence. *Id.* at 546–47.

The District Court held that Mracek did not offer any evidence to eliminate reasonable, secondary causes for the malfunction of the robot or to demonstrate that the malfunction caused his injury. Mracek contends that the Court erred in so holding because he would offer his own testimony and testimony from two treating physicians, including the surgeon who performed the procedure and his urologist who would testify about his pre– and post–operative condition. Although he did not submit any expert reports, Mracek argues that it was unnecessary to do so because his treating physicians were not retained in anticipation of litigation, *see* Fed. R.Civ.P. 26(a)(2)(B), and because the alleged defect is obvious and easily understood by a jury given that the robot displayed "error" messages and was unable to complete the surgery, *see Padillas v. Stork–Gamco, Inc.,* 186 F.3d 412, 415–16 (3d Cir.1999) (expert evidence may be unnecessary where "testimony and pictures may enable the jury to clearly see the construction of the machine and the manner of its use").

However, separate and apart from whether summary judgment was proper because Mracek failed to produce any expert reports, it surely was proper because he failed to demonstrate a genuine dispute of material fact. Most importantly, there is no record evidence that would permit a jury to infer Mracek's erectile dysfunction and groin pain were caused by the robot's alleged malfunction.[1] *See Barnish,* 980 A.2d at 542 ("The courts have noted that while the plaintiff need not demonstrate the actual product defect, the plaintiff 'cannot depend upon conjecture or guesswork.'") (quoting *Dansak v. Cameron Coca–Cola Bottling Co.,* 703 A.2d 489, 496 (Pa.Super.Ct.1997)). Accordingly, because Mracek did not "introduce evidence from which a rational finder of fact could find in [his] favor," *Woloszyn v. County of Lawrence,* 396 F.3d 314, 319 (3d Cir.2005), the District Court properly granted summary judgment against him.

## IV.

We will affirm the judgment of the District Court.

---

1. The "Operative Report" describes the "malfunction" of the da Vinci robot, but does not discuss any cause of the malfunction. (App. at 81–83.) The medical records note Mracek's erectile dysfunction, but his urologist did not opine on the cause of that condition. *See, e.g., id.* at 92 ("[Mracek] had very successful laparoscopic radical prostatectomy several months ago.... His only problem at this time is erectile dysfunction.").